IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY ARAGON,

        **Plaintiff,**

v.                                                 No. CIV-14-1102 LAM

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

        **Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (*Doc. 23*), filed September 10, 2015 (hereinafter "motion"). On December 14, 2015, Defendant filed a response to Plaintiff's motion (*Doc. 30*) and, on December 30, 2015, Defendant filed a reply (*Doc. 31*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Doc. 24*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 15*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") should be **REMANDED**.

## I.   Procedural History

On September 15, 2011, Plaintiff filed applications for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI"), alleging that he became disabled on January 14, 2011.  [*Doc. 17-7* at 2-5 and 6-11, respectively].  Plaintiff claimed that he became disabled due to post-traumatic stress disorder (hereinafter "PTSD"), depression, anxiety, chronic thoracic pain, Type 2 diabetes, gastro-esophageal reflux disorder, testosterone deficiency, sleep apnea, insomnia, restless leg syndrome, nocturnal hypoxia, and benign prostatic hyperplasia.  [*Doc. 17-8* at 6].  Each application was denied at the initial level on January 17, 2012 (*Doc. 17-4* at 2),[1] and at the reconsideration level on April 27, 2012 (*id.* at 6, 16).  Pursuant to Plaintiff's request (*Doc. 17-5* at 20-21), Administrative Law Judge Barry O'Melinn (hereinafter "ALJ") conducted a hearing on February 21, 2013.  [*Doc. 17-3* at 29-63].  At the hearing, Plaintiff was present, represented by attorney Michelle Baca, and testified.  *Id.* at 31, 36-55).  Vocational Expert (hereinafter "VE") Mary Diane Weber was also present and testified (*id.* at 31, 56-62).

On April 15, 2013, the ALJ issued his decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled through the date of the decision.  [*Doc. 17-3* at 12-24].  Plaintiff requested that the Appeals Council review the ALJ's decision.  *Id.* at 8.  By order dated October 3, 2014, the Appeals Council denied Plaintiff's request for review, on the

---

[1] The record transcript contains only the agency's initial denial of Plaintiff's SSI claim.  However, as there are reconsideration denials of both his DIB and SSI claims, this omission from the record is not significant.

ground that there was "no reason under our rules to review the [ALJ]'s decision." *Id*. at 2. This decision was the final decision of the Commissioner. On December 5, 2014, Plaintiff filed his complaint in this case. [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must

include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a).  In light of this definition for disability, a five-step sequential evaluation process (hereinafter "SEP") has been established for evaluating a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that:  (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national

economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on June 4, 1967, and was 43 years old on January 14, 2011, the alleged onset of disability date. [*Doc. 17-8* at 2]. Plaintiff graduated from high school and completed one semester of college at the University of New Mexico. [*Doc. 17-3* at 42]. Prior to his alleged disability, Plaintiff had worked as a customer service representative by phone, a user support representative, a patient transporter, an orthopedic technician, a cashier, and a pharmacy technician. [*Doc. 17-3* at 22-23, 37-41].

Plaintiff's medical records include:  Disability Determination Examination, dated December 7, 2011, by Louis Wynne, Ph.D. (*Doc. 17-15* at 75-79); Psychiatric Review Technique (*Doc. 17-16* at 2-13) and Mental RFC (*id*. at 14-16), both dated December 20, 2011, by Carol Mohney, Ph.D; Physical RFC, dated January 4, 2012, by Mary Lanette Rees, M.D. (*id*. at 17-22); Case Management Note, dated October 3, 2012, by Plaintiff's treating physician, Juliane N. Bohan, M.D. (*Doc. 17-20* at 39-40). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process the ALJ found that Plaintiff "has not engaged in substantial gainful activity" since his alleged disability onset date of January 14, 2011. [*Doc. 17-3* at 14]. At step two, the ALJ found that Plaintiff has the following severe medically determinable impairments: "Major Depressive Disorder (MDD), generalized anxiety disorder (GAD), hypertension, a history of knee and ankle disorders and obesity." *Id.*.  At the third step,

the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, App'x. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 15. The ALJ considered Plaintiff's obesity, noting that it is no longer a listed impairment, and found that it has not "reached a level that would cause [Plaintiff]'s other impairments to meet or medically equal a listed impairment." *Id*. The ALJ also found that Plaintiff had mild restriction of his activities of daily living, moderate difficulties with social functioning, and moderate difficulties with concentration, persistence or pace. *Id*. at 16. Therefore, the ALJ determined that Plaintiff's mental impairments did not satisfy the paragraph B or paragraph C criteria for Listings 12.04, 12.06, and 12.08. *Id*. at 15-16. Finally, the ALJ considered Listing 12.09 with respect to Plaintiff's history of poly-substance abuse, concluding that the "prior substance abuse is not material and is non-severe in that it has not resulted in any significant limitation in his ability to do basic work activities." *Id*. at 17.

> Before step four, the ALJ determined that Plaintiff had the RFC:
>
> [T]o perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the [Plaintiff] can occasionally climb ramps and stairs, can never climb ladders, ropes or scaffolds, can occasionally kneel, crouch and crawl, must avoid concentrated exposure to operational control of moving machinery, unprotected heights, and exposure to hazardous machinery. The [Plaintiff] can understand, remember and carry out simple instructions and make commensurate work-related decisions, respond appropriately to supervision, co-workers and work situations, and is able to deal with routine changes in the work setting, maintain concentration,

>persistence or pace for up to two hours at a time with normal breaks throughout the workday, but would be suitable for jobs involving work primarily with things and not people.

[*Doc. 17-3* at 17]. In support of his RFC assessment, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id*. at 20.

At the fifth and final step, the ALJ noted that Plaintiff was born on June 4, 1967, and was therefore 43 years old on the alleged disability onset date, which is considered to be a younger person pursuant to 20 C.F.R. §§ 404.1563(c) and 416.963(c) (defining a "younger person" as "under age 50"). [*Doc. 17-3* at 23]. The ALJ noted that Plaintiff has at least a high school education and is able to communicate in English, and stated that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is 'not disabled,' whether or not [he] has transferable job skills." *Id*. However, the ALJ noted that Plaintiff's ability to perform the full range of light work "has been impeded by additional limitations," and asked the VE to determine "whether jobs exist in the national economy for an individual with the [Plaintiff]'s age, education, work experience, and [RFC]." *Id*. at 23-24. The VE testified that such an individual "would be able to perform the requirements of representative occupations," including: mail sorter

7

(DOT 209.687-026), [2] cleaner/housekeeper (DOT 323.687-014), and warehouse checker (DOT 222.687-022), all of which are considered "light, unskilled work." *Id*. Based on the VE's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 24. The ALJ stated that he "ha[d] determined that the [VE]'s testimony is consistent with the information contained in the [DOT]," and concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* Therefore, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act from January 14, 2011 to the date of the decision. *Id.*

## V.   Analysis

Plaintiff makes the following arguments in his motion to reverse or remand: (1) the ALJ improperly rejected findings by the Administration's own medical experts, and failed to express his RFC assessment in terms of work-related mental activities; and (2) the ALJ failed to inquire about or resolve discrepancies between the VE's testimony and the DOT. [*Doc. 23* at 2]. In response, Defendant argues that the ALJ reasonably weighed the medical evidence and properly expressed Plaintiff's RFC, and any error regarding the VE's testimony was harmless. [*Doc. 30* at 11, 15, 16]. In his reply brief, Plaintiff argues that Defendant has mischaracterized Plaintiff's

---

[2] "DOT" stands for Dictionary of Occupational Titles.

arguments and fails to address the real issues, and that the conflicts between the VE's testimony and the DOT were not resolved and, therefore, are not harmless error. [*Doc. 31*].

### A.   The ALJ's RFC Assessment

In December 2011, Plaintiff was examined, at the Administration's request, by Louis Wynne, Ph.D., who provided an assessment of Plaintiff's psychological disability. [*Doc. 17-15* at 75-79]. In his assessment, Dr. Wynne diagnosed Plaintiff with major, recurrent, severe depression with psychotic features, alcohol abuse in remission, opioid abuse, panic disorder, and cognitive disorder (not otherwise specified) due to head injury. *Id*. at 77. Dr. Wynne assigned Plaintiff a Global Assessment of Functioning (hereinafter "GAF") score of 51 (*id*. at 78), which indicates "moderate" symptoms.[3] Dr. Wynne noted that Plaintiff "cooperated fully" in the examination and, regarding the effect of Plaintiff's mental limitations on his work performance, stated:

> [Plaintiff] can read and understand basic written instructions but his concentration and ability to persist at simple work tasks are at least mildly impaired. He could interact with the general public but he might have difficulty interacting with his

---

[3] The GAF score is a measurement of the clinician's judgment of an individual's psychological, social and occupational functioning, and should not include impairment in functioning due to physical or environmental limitations. DSM-IV-TR at 32. A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id*. at 34.

       coworkers and his supervisors.   He also might have difficulty adapting to changes
       in the workplace.

*Id*. at 77.   The ALJ gave Dr. Wynne's opinion "some weight, because Dr. Wynne personally examined the [Plaintiff] and because [the opinion] is consistent with the medical evidence of record."   [*Doc. 17-3* at 21].   Nonetheless, based on the ALJ's own determination that Plaintiff's "substance abuse is in remission,"[4] and that Plaintiff's daily activities "are not as limited as one would expect," the ALJ determined that there was no "need for greater social limits than [the ALJ has] assigned here."   *Id*. at 20-21.

     Also in December 2011 and at the Administration's request, Carol Mohney, Ph.D reviewed Plaintiff's psychiatric medical records and provided a Mental RFC assessment of Plaintiff on that basis.   [*Doc. 17-16* at 14-16].   In Section I of her RFC assessment, Dr. Mohney indicated that Plaintiff was moderately limited in ten out of twenty abilities, including: understanding and remembering detailed instructions; carrying out detailed instructions; working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically-based symptoms and

---

[4] The ALJ's finding that Plaintiff's drug use is in "sustained remission" appears to be entirely based on Plaintiff's own testimony that he had not used illegal drugs in ten months.   [*Doc. 17-3* at 17].   On the other hand, less than five months prior to the hearing, Juliane N. Bohan, M.D., who had been Plaintiff's primary care physician for over a year, indicated that Plaintiff was still taking Methadone daily (for his opiate addiction), that he had "numerous medical and psychiatric issues with unstable depression and recent suicide attempt," and that "[h]is medical and psychiatric conditions have not improved over the past year."   [*Doc. 17-20* at 39-40].   However, the ALJ gave Dr. Bohan's opinion "little weight," partly because she had also opined that Plaintiff should be able to receive disability benefits, and partly based on Plaintiff's "medical history, which reflects improvement in his condition since his drug abuse went into sustained remission."   [*Doc. 17-3* at 22].   If Plaintiff's medical records do show such an improvement, it would have made this Court's ability to follow the ALJ's reasoning significantly easier had he simply cited the portions of the record upon which he relied.

performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; being aware of normal hazards and taking appropriate precautions; traveling in unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others. *Id*. at 14-15. Dr. Mohney assessed Plaintiff's ability to respond appropriately to changes in the work setting as "markedly" limited.[5] *Id*. at 15. Despite these findings, Dr. Mohney's entire "narrative" in Section III of the RFC is that "[Plaintiff] retains the capacity to understand, remember and carry out simple, repetitive tasks on a sustained basis." *Id*. at 16. Thus, Dr. Mohney's narrative discusses only two of twenty assessed abilities, both of which she indicated were "not significantly limited" in her assessment of Plaintiff's RFC. *Id*. at 14.

As recently discussed by the Tenth Circuit Court of Appeals in *Carver v. Colvin*, 600 Fed. App'x 616, 619 (10th Cir. 2015) (unpublished), the narrative statement in Section III of the Mental RFC form is for the medical source to "explain[] the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." The narrative should "[i]dentify the [Section I] subsection (e.g., Understanding and Memory), then discuss the functions that the individual has demonstrated that he/she can do,

---

[5] "Markedly Limited" means that "the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity." POMS DI 24510.063. "POMS" refers to the Social Security Administration's Program Operations Manual Systems. "DI" refers to the Disability Insurance section of the Manual.

as well as any limitations of those functions." POMS DI 24510.065.B.1. Although Dr. Mohney's narrative utterly fails to meet this standard, the ALJ still gave her opinion "some weight," while also noting that Dr. Mohney had "opined the [Plaintiff] had moderate restrictions in his activities of daily living as well as maintaining social functioning and concentration, persistence or pace." [*Doc. 17-3* at 21] The ALJ then discounted at least one portion of Dr. Mohney's RFC Assessment based on his own conclusion that Plaintiff's "daily activities support the conclusion he is capable of work consistent with my determination." *Id*.

Significantly, the ALJ relied heavily on a list of activities of daily living (hereinafter "ADL") as evidence of Plaintiff's lack of credibility regarding his symptoms. The list, which is general rather than specific, is recited several times in the ALJ's decision and includes Plaintiff's ability to take care of himself and his children, do light housework, go outside daily, drive, shop for groceries, pay bills, count change, and "handle" a savings account. *See* [*Doc. 17-3* at 16 (twice), 18, 20, 22]. First, the ALJ does not elaborate on how such activities render Plaintiff's testimony less than credible, nor how they indicate that Plaintiff's work-related limitations should be given any less weight. For example, there is no discussion about just how much or how well Plaintiff "cares for" himself or his daughters (who were 15 and almost 13 at the time of the hearing), or what kind of "light housework" Plaintiff does or how often he does it. Plaintiff did testify that he drove by himself to the hearing and that he drives his children to school, but also that he is "afraid" to drive, and that he goes grocery shopping only about once a month. Much of his time is spent simply watching TV at his parents' home, which is where he and his daughters live, and where his mother does all of the cooking and most of the housework. The ALJ's statement that Plaintiff's "legal custody" of his children "undermines his claim, as he would be unlikely to

12

have legal custody if he were unfit for parental duties" is pure speculation. Although Plaintiff testified that his two daughters live with him (and his parents), he did not elaborate on the circumstances that led to that arrangement, nor did he state that he had "legal custody" of his children.

More importantly, the mere fact that Plaintiff's daughters have not been removed from his care certainly does not establish as a fact that he is a consistently fully-functioning parent. Similarly, an ability to care for one's children is no guarantee that one is able to perform work in a competitive market. Since no attempt was made to develop the extent or quality of Plaintiff's "care" of his daughters at the hearing, it is disingenuous to consider that general fact as evidence that Plaintiff is not as limited as he claims. Moreover, none of the activities the ALJ listed as evidence that Plaintiff is not as limited as he claims relates in any significant way to the work-related abilities in which Plaintiff was found to be moderately or markedly limited, including taking criticism from supervisors and adapting to changes in a work setting. Thus, it has long been held that "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Bright v. Astrue*, No. 08-1196-MLB, 2009 WL 1580308, at *4 (D. Kan. June 4, 2009) (unpublished), citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (an "ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain"). Certainly, the relationship between engaging in minimal daily activities and a claimant's mental capacity to work is even more tenuous than the relationship between a claimant's activities and his physical ability to work.

It is apparent to this Court that the ALJ gave weight to those portions of Drs. Wynne and Mohney's opinions that correlated with his own view of Plaintiff's RFC, and disregarded the rest

13

based on his own opinion of the evidence.  The ALJ made no effort to discuss the overlapping limitations indicated by both medical sources, apparently concluding that assessing Plaintiff capable of light, unskilled work would be sufficient.   This is not how an ALJ is expected to render an RFC assessment, however, and "[a] limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments."  *Groberg v. Astrue*, 505 Fed. App'x 763, 770 (10th Cir. 2012) (unpublished), relying, in part, on *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012).   Defendant contends that limiting Plaintiff to "working with things rather than people," as did the ALJ here, "is one way to describe an expectation of unskilled work," citing Soc. Sec. Rep.  85-15 (1985).  However, this argument misses the point, which is that unskilled work cannot be performed by a claimant who lacks the abilities that are necessary to jobs of any skill level.  Thus, Soc. Sec. Rep.  85-15 also states:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

*Id*.  at *4.   In this respect, POMS lists the mental abilities that are needed for *any* job, regardless of the skill level assigned to a particular claimant.  *See* DI 25020.010.B.2.  Several of the "needed for any job" abilities listed in POMS were specifically identified by Drs. Wynne and Mohney as either moderately or markedly limited in Plaintiff's case.  Those abilities are: working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods;

14

accepting instructions and responding appropriately to criticism from supervisors; being aware of normal hazards and taking appropriate precautions; and responding appropriately to changes in the work setting.[6]

The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any. Soc. Sec. Rep. 96-8p at *5. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions. *Id*. Because the ALJ must consider the whole record, he is prohibited from picking and choosing "among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation and internal quotation marks omitted). When there are multiple opinions regarding

---

[6] Dr. Wynne did not fill out a standard Mental RFC form and, therefore, did not assign specific limitations to Plaintiff's abilities. However, he did express that Plaintiff "might have difficulty interacting with his coworkers and his supervisors . . . [and] also might have difficulty adapting to changes in the workplace." [*Doc. 17-15* at 77].

medical severity and functional ability from different sources, the ALJ must explain the weight given to each source's opinions. *Hamlin*, 365 F.3d at 1215 (citation omitted).

The ALJ's utter disregard of Plaintiff's limitations in abilities necessary to any job simply does not satisfy this standard, and leaves significant gaps in his assessment of Plaintiff's RFC, which require remand of this case for further consideration.

### B.   Consistency of the VE's Testimony with the DOT

Plaintiff also contends that the VE's trial testimony conflicts with the DOT job requirements. However, because the Court finds that Plaintiff's case should be remanded for further consideration of the medical evidence, the Court finds that it is unnecessary to reach Plaintiff's claim regarding the VE's testimony, which the ALJ relied on at step five, because that claim may be affected by the findings on remand. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) (declining to reach the plaintiff's step five claims because they may be affected by resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 371 Fed. App'x. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (as the ALJ erred by failing to articulate the weight given to treating physicians' opinions, court need not reach claims regarding ALJ's reliance on VE testimony, since such issues may be affected by treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

## VI.  Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded for further proceedings, including proper consideration of medical evidence regarding the effect of Plaintiff's limitations on his ability to retain competitive employment.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum* (*Doc. 23*) is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes A. Martínez*
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**